UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

WILLIAM EARL DUNCAN,
     Plaintiff,

vs.                              Case No.:  3:21cv895/LAC/EMT

FLORIDA DEP'T OF LAW
ENFORCEMENT, et al.,
     Defendants.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Williams Earl Duncan (Duncan), an inmate of the Florida Department of Corrections (FDOC) proceeding pro se and in forma pauperis, commenced this action by filing a civil rights complaint pursuant to 42 U.S.C. § 1983 (ECF No. 1).  The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters.  *See* N.D. Fla. Loc. R. 72.2(C); *see also* 28 U.S.C. § 636(b)(1)(B)–(C); Fed. R. Civ. P. 72(b).  After careful consideration of the issues presented, it is the opinion of the undersigned that Duncan's Complaint fails to state a plausible claim for relief, and this deficiency cannot be cured with an amended pleading.  Therefore, the Complaint should be dismissed with prejudice for failure

to state a claim upon which relief can be granted, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b).

## I.    BACKGROUND

Duncan names three Defendants in this case, the Florida Department of Law Enforcement (FDLE), the Florida Department of Corrections (FDOC), and an unidentified deputy from the Walton County Sheriff's Office (WCSO) (*see* ECF No. 1 at 1–3).[1] Duncan claims Defendants erroneously required him to register as a sex offender under Florida's sexual offender registration statute, Fla. Stat. § 943.0435, in violation of his due process rights under the Fifth and Fourteenth Amendments and his rights under the Eighth Amendment (*id.* at 13–14). Duncan alleges Defendants' conduct caused "ongoing distress all affecting quality of life" (*id.* at 14). Duncan seeks compensatory and punitive damages (*id.* at 13).

## II.    STATUTORY SCREENING STANDARD

Because Duncan is a prisoner proceeding in forma pauperis, the court must dismiss this case if the court determines it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b). The

---

[1]    The court refers to the page numbers automatically assigned by the court' electronic filing system.

statutory language "tracks the language of Federal Rule of Civil Procedure 12(b)(6)," and thus dismissals for failure to state a claim are governed by the same standard as Rule 12(b)(6). *Mitchell v. Farcass*, 112 F.3d 1483, 1490 (11th Cir. 1997). The allegations of the complaint are taken as true and construed in the light most favorable to the plaintiff. *See Davis v. Monroe Cnty. Bd. of Educ.*, 120 F.3d 1390, 1393 (11th Cir. 1997).

The court may consider documents attached to a complaint or incorporated into the complaint by reference, as well as matters of which a court may take judicial notice.[2] *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Saunders v. Duke*, 766 F.3d 1262, 1272 (11th Cir. 2014).

---

[2]    Federal Rule of Evidence 201 permits a court to "judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). Rule 201 does not require courts to warn parties before taking judicial notice of some fact, but, upon the party's request, it does require an opportunity to be heard after the court takes notice. Fed. R. Evid. 201(e).

Duncan is hereby advised that if he disputes the accuracy of the facts taken from the judgment attached to this Report and Recommendation, or if he otherwise wishes to be heard on the propriety of the court's taking judicial notice of those facts, he must do so in an objection to this Report and Recommendation. *See Paez v. Sec'y, Fla. Dep't of Corr.*, 947 F.3d 649, 651–53 (11th Cir. 2020) (district court properly took judicial notice where petitioner had opportunity to object to report and recommendation after magistrate judge took judicial notice of dates from petitioner's state court dockets, but petitioner did not ask to be heard, dispute accuracy of judicially noticed facts, or indicate he lacked the ability to dispute state court dockets).

To survive dismissal at the screening phase, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). The plausibility standard is met only where the facts alleged enable "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Plausibility means "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks and citation omitted).

The determination of whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (citation omitted). The court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 678 (internal quotation marks and citation omitted). And "bare assertions" that "amount to nothing more than a "formulaic recitation of the elements" of a claim "are conclusory and not entitled to be assumed true." *Id.* at 681 (internal quotation marks and citation omitted). Stated succinctly,

[p]leadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Id.* at 679.

## III. DUNCAN'S FACTUAL ALLEGATIONS

Duncan was convicted in the Circuit Court in and for Escambia County, Florida, Case No. 1989-CF-4006, of attempted sexual battery under Florida Statutes §§ 794.011(3), 777.04, and two other felonies (*see* ECF No. 1 at 5; *see also* partial judgment attached to Report and Recommendation). The state court sentenced Duncan to five years in the FDOC for his convictions of armed burglary of a conveyance, attempted sexual battery, and aggravated battery with a deadly weapon (*id.*). Duncan was released from the FDOC on October 1, 1992 (ECF No. 1 at 5).

On November 7, 1997, Duncan was convicted of grand theft auto and sentenced to ten years in the FDOC (ECF No. 1 at 6). Duncan was released on conditional release supervision on December 2, 2002 (*id.*). On May 21, 2003, Duncan was arrested for violating the conditions of his supervision (*id.* at 7). Duncan was returned to prison for violating the conditions of his supervision (*id.*).

On October 1, 2005, Duncan was again released on conditional release supervision, even though he told FDOC officials he was unable to provide a "verifiable living address" and that registering as a sex offender "was no option" (ECF No. 1 at 7). Duncan was transported from an FDOC correctional institution to a state probation office (*id.* at 7–8). In the probation office, Duncan met with two "civilians," one of whom had a gold badge on his belt (*id.* at 8).[3] The Defendant WCSO deputy was also present (*id.*). Duncan alleges he was given one more opportunity to provide a verifiable address, and when he refused, the "civilian" with the gold badge arrested him for violating the conditions of his supervision (*id.*). The WCSO deputy placed Duncan in her patrol car and transported him to the Walton County Jail for booking (*id.* at 8–9). During the transport, the deputy informed Duncan that the arresting officer instructed her to register him as a sex offender (*id.*). At the Jail, the deputy collected the information required by Florida's sexual offender registration statute and provided the information to the FDLE (*id.* at 9). Duncan was booked into the Jail for violating the conditions of his release (*id.*). He was returned to prison on October 12, 2005 (*id.*).

---

[3] The FDOC is responsible for supervising conditional releasees. *See* Fla. Stat. §§ 947.1405(2).

On November 20, 2006, Duncan was again released on conditional release supervision (ECF No. 1 at 9).  In March 2007, Duncan successfully completed his supervision (*id.* at 10).

On January 26, 2010, Duncan was sentenced to the FDOC for arson and burglary of a dwelling (ECF No. 1 at 10).  He is currently serving that sentence (*id.*).

Duncan states he continuously complained to the FDLE that he did not qualify for sex offender registration (ECF No. 1 at 10–11).  On September 20, 2018, Duncan filed a petition for writ of mandamus in the Leon County Circuit Court, Case No. 2018-CA-2137, seeking a court order requiring the FDLE, FDOC, and Florida Commission on Offender Review (the agency responsible for Florida's conditional release program) to remove him from the sexual offender database (*id.* at 11–12).  A copy of the state court's order, which Duncan attached to the Complaint, affirms that on July 11, 2019, the state court dismissed the mandamus petition as moot after the FDLE and the FDOC filed responses stating Duncan was removed from the sexual offender database (*see* ECF No. 1-1 at 4–6 (court order)).

Duncan now seeks monetary damages for the distress and diminished quality of life he suffered as a result of Defendants' requiring him to register, allegedly in

violation of his due process rights under the Fifth and Fourteenth Amendments and the Eighth Amendment's prohibition of cruel and unusual punishment.

## IV.   DISCUSSION

### A.   **Duncan cannot obtain the relief he seeks from the FDLE and the FDOC.**

Duncan seeks compensatory and punitive damages from the FDLE and the FDOC for the alleged violations of his constitutional rights.  However, the Eleventh Amendment is an absolute bar to suit for monetary damages by an individual against a state or its agencies, or against officers or employees of the state or its agencies in their official capacities.  *Edelman v. Jordan*, 415 U.S. 651, 662–63 (1974).  Absent waiver or express congressional abrogation, neither of which is present in this case, the Eleventh Amendment bars Duncan's claims for monetary damages against the FDLE and the FDOC, which is all the relief he seeks.  Therefore, Duncan's claims against the FDLE and the FDOC must be dismissed.

### B.   **Duncan cannot state a plausible constitutional claim against the WCSO deputy.**

Duncan asserts Fifth, Eighth, and Fourteenth Amendment claims against the WCSO deputy (ECF No. 1 at 14).  Duncan contends the deputy deprived him of his

liberty and subjected him to cruel and unusual punishment by "blindly" collecting his initial registration information and forwarding it to the FDLE (*id.*).

### 1.    Florida's Sexual Offender Registration Statute

The FDLE is responsible for maintaining the sexual offender registry.  *See* Fla. Stat. §§ 943.02, 943.0435(11).  The statutory definition of "sexual offender" includes a person who (1) has been convicted of committing or attempting to commit a qualifying offense, including sexual battery under Fla. Stat. § 794.011, and (2) "[h]as been released *on or after October 1, 1997*," from the sanction imposed for that conviction.  Fla. Stat. § 943.0435(1)(h)1.a. (emphasis added).  In relevant part, the statute requires the sexual offender to report in person to a sheriff's office and provide detailed identification information, including employment information, address, vehicle information, telephone numbers, e-mail and internet identifiers, and a description of his qualifying offense.  *See* Fla. Stat § 943.0435(2).  The sheriff's office must take a photograph, set of fingerprints, and palm prints of the offender and promptly forward them to the FDLE, along with the information provided by the sexual offender.  *See id.*  A sexual offender who does not comply with the statutory requirements commits a third degree felony.  *See* Fla. Stat. § 943.0435(9).

Duncan did not qualify for sexual offender registration.  Although he was convicted of attempted sexual battery, which is a qualifying offense under Florida's sexual offender registration statute, he was released from all sanctions for this conviction *prior to* October 1, 1997.  *See* Fla. Stat. § 943.0435(10(h)1.a.

> 2.    The WCSO deputy did not violate Duncan's substantive or procedural due process rights.

The due process clauses of the Fifth and Fourteenth Amendments protect against deprivations of "life, liberty, or property, without due process of law."  U.S. Const. amends. V, XIV, § 1.  These provisions have been interpreted to have both a substantive and procedural component when reviewing state action.  *See Doe v. Moore*, 410 F.3d 1337, 1342 (11th Cir. 2005).

The substantive component protects fundamental rights that are so "implicit in the concept of ordered liberty" that "neither liberty nor justice would exist if they were sacrificed."  *Moore*, 410 F.3d at 1342 (citations omitted).  The Supreme Court has recognized that fundamental rights include those guaranteed by the Bill of Rights as well as certain "liberty" and privacy interests implicit in the due process clause and the penumbra of constitutional rights.  *See id.* at 1343 (citations omitted).  These special "liberty" interests include the rights to marry, to have children, to direct the

education and upbringing of one's children, to marital privacy, to use contraception, to bodily integrity, and to abortion. *Id.* (citations omitted).

The Eleventh Circuit has held that Florida's sex offender registration statute does not infringe upon fundamental rights. *See Moore*, 410 F.3d at 1342–46 (holding that the right of a sex offender to refuse registration of his or her personal information with state law enforcement and prevent publication of that information on the state sex offender website is not "deeply rooted," and noting that a state's publication of truthful information that is already available to the public does not infringe the fundamental constitutional rights of liberty and privacy); *see also Waldman v. Conway*, 871 F.3d 1283, 1292 (11th Cir. 2017) (holding that plaintiff, who was convicted of kidnapping of a minor, which was defined as a "sex offense" under state law at the time of his conviction, had no substantive due process right to be free from sex offender classification in prison even though the crime did not involve sexual conduct with the child he abducted) (citing *Moore*).

Where a fundamental liberty interest does not exist, substantive due process nonetheless protects against the arbitrary and oppressive exercise of government power. *See Waldman*, 871 F.3d at 1292 (citing *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 845–46 (1998)). "Executive action is arbitrary in a constitutional sense

when it 'shocks the conscience.'" *Waldman*, 871 F.3d at 1292 (quoting *Lewis*, 528 U.S. at 846). "Only the most egregious conduct is sufficiently arbitrary to constitute a substantive due process violation." *Tinker v. Beasley,* 429 F.3d 1324, 1328 (11th Cir. 2005). For example, "conduct designed to injure someone in a fashion that is not justified by any government interest may rise to the conscience-shocking level." *Waldman*, 871 F.3d at 1292–93 (citing *Tinker*, 429 F.3d at 1328).

Duncan was convicted of attempting "oral, anal, or vaginal penetration by, or union with, the sexual organ of another or the anal or vaginal penetration of another by any other object," *see* Fla. Stat. § 794.011(h). The deputy's collecting Duncan's registration information and forwarding it to the FDLE did not infringe upon Duncan's fundamental rights, nor was the deputy's doing so sufficiently egregious or conscience-shocking to constitute an arbitrary and oppressive exercise of government power. Duncan's allegations do not state a plausible substantive due process claim. *See Waldman*, 871 F.3d at 1293 (citations omitted) (holding that although the plaintiff's kidnapping offense did not involve sexual contact with a minor, the prison conditions imposed on him by being classified as a sexual offender, including attending sex offender classes or therapy and ineligibility for work release,

furthered the goal of protecting children and were not so egregious as to "shock the conscience.").

The more common procedural component of the Due Process Clause guarantees that a state will not deprive a person of life, liberty, or property without some form of notice and opportunity to be heard. *Moore*, 410 F.3d at 1342 (citing *Hamdi v. Rumsfeld*, 542 U.S. 507 (2004)).

The Eleventh Circuit has held the "stigmatizing effect" of being classified as a sex offender, *absent a conviction for a sex related crime*, constitutes a deprivation of liberty under the Due Process Clause; therefore, "[a]n inmate who has *never been convicted of a sex crime* is entitled to due process before the state declares him to be a sex offender." *Kirby v. Siegelman*, 195 F.3d 1285, 1291–92 (11th Cir.1999) (emphasis added). After *Kirby*, the Eleventh Circuit clarified that a plaintiff does *not* have a liberty interest in not being classified as a sex offender *if he was convicted of a crime that was statutorily categorized under state law as a sex offense at the time of his conviction* and remained categorized as such ever since. *See Waldman*, 871 F.3d at 1290–91 (emphasis added).

Duncan was convicted of a sex-related crime and thus suffered no undue stigmatization as a result of the deputy's collecting his registration information and

forwarding it to the FDLE. Duncan thus cannot show he was entitled to any additional process before his registration. *See Waldman*, 871 F.3d 1283, 1292 ("[T]he only stage at which procedural due process could be measured with respect to the challengers' status as sex offenders was the conviction stage. Any subsequent sex offender classifications did not "deprive" the challengers of any constitutionally protected interests, because those interests did not survive conviction.") (citing *United States v. Veal*, 322 F.3d 1375 (11th Cir .2003)).

Moreover, post-deprivation process was available for Duncan if he had been charged with refusing or failing to comply with the registration requirements. *See State v. James*, 298 So. 3d 90, 94 (Fla. 2d DCA 2020) (affirming trial court's dismissal of charges for failing to report and register under § 943.0435, where defendant did not qualify as a "sexual offender" under the plain meaning of the statute); *see also Bish v. State*, 139 So. 3d 451, 452 (Fla. 2d DCA 2014) (reversing lower court's denial of post-conviction relief on defendant's claim he was not required to register as a sexual offender); *Acevedo v. State*, 108 So. 3d 719, 720 (Fla. 5th DCA 2013) (same). Likewise, a post-deprivation remedy was available—*and obtained* by Duncan—to compel the FDLE to remove Duncan from Florida's sexual

offender database and relieve him of the corresponding registration requirements (*see* ECF No. 1-1 at 4–6).

Duncan cannot show that the deputy's collecting his registration information and forwarding it to the FDLE deprived him of a constitutionally protected liberty interest without due process of law. Therefore, Duncan cannot state a plausible due process claim.

       3.    <u>The WCSO deputy did not violate Duncan's Eighth Amendment rights.</u>

Duncan's Eighth Amendment claim against the WCSO deputy is based upon the same facts as his due process claim. Duncan alleges the deputy "blindly" followed the arresting officer's instructions to register him, which caused "ongoing distress" and diminished quality of life (ECF No. 1 at 14).

The Eighth Amendment to the United States Constitution states: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. Amend. VIII. While "the primary concern of the drafters was to proscribe tortures and other barbarous methods of punishment," the Supreme Court has recognized that the Eighth Amendment "embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976).

Florida's sexual offender registration statute does not impose cruel and unusual punishment, as the statute—in requiring persons who committed sexual offenses to submit personal information and the state to publish that information—is similar to the registration statutes that the Supreme Court and Eleventh Circuit have determined to be civil and regulatory in nature, rather than punitive. *See Smith v. Doe*, 538 U.S. 84, 93 (2003) (holding in general, that the imposition of restrictive measures on sex offenders, including requiring registration on a public database, is not punitive); *United States v. W.B.H.*, 664 F.3d 848, 860 (11th Cir. 2011) (determining that registration requirement under federal sexual offender registration statute was not punitive).  Further, any alleged distress and diminished quality of life Duncan suffered because of the registration are not sufficiently serious to rise to the level of cruel and unusual punishment. *See, e.g., United States v. Juvenile Male*, 670 F.3d 999, 1010 (9th Cir. 2012) (holding that the federal sex offender registration law did not violate the Eighth Amendment given that "[t]he bar for cruel and unusual punishment is high"); *Holland v. Governor of Ga.*, 781 F. App'x 941, 945–46 (11th Cir. 2019) (rejecting plaintiff's claim that Georgia's sex offender registration statute subjected him to cruel and unusual punishment in violation of the Eighth Amendment); *Chrenko v. Riley*, 560 F. App'x 832, 835 (11th Cir. 2014) (rejecting

plaintiff's claim that harassment he allegedly suffered because of state sexual offender registration statute constituted cruel and unusual punishment). Therefore, Duncan cannot state a plausible Eighth Amendment claim against the ECSO deputy.

V.     CONCLUSION

Duncan's factual allegations fail to state a plausible claim for relief against any Defendant, and there is no indication that providing Duncan an opportunity to amend his Complaint would produce a pleading that states a plausible federal claim. Therefore, the undersigned recommends that the Complaint be dismissed with prejudice, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1).

Accordingly, it respectfully **RECOMMENDED**:

1.     Plaintiff's Complaint (ECF No. 1) be **DISMISSED with prejudice** for failure to state a claim, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1).

2.     The clerk of court be directed to enter judgment accordingly and close this case.

At Pensacola, Florida, this 18th day of February 2022.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen days of the date of the Report and Recommendation.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control</u>.  An objecting party must serve a copy of the objections on all other parties.  A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**

Copy of true
Convicted offense

_Duncan_

THIS IS TO CERTIFY THAT THE MICROPHOTOGRAPHS APPEARING ON THIS FILM ARE TRUE AND ACCURATE REPRODUCTIONS OF THE ORIGINAL RECORDS THAT WERE IN THE CUSTODY OF THE CLERK OF THE CIRCUIT COURT AND COUNTY COURT ON THE DATE OR DURING THE PERIOD INDICATED AND THAT THE IMAGES WERE MADE IN THE NORMAL COURSE OF BUSINESS WITH A REGULARLY SCHEDULED MICROFILMING PROGRAM.

WITNESS MY HAND AND OFFICIAL SEAL.
DATE:

CLERK OF CIRCUIT COURT • ESCAMBIA CO., NTY • PENSACOLA, FLORIDA
CERTIFICATE OF AUTHENTICITY

ERNIE LEE MAGAHA, CLERK OF COURTS
BY:
DEPUTY CLERK

☒ **PROBATION VIOLATOR**
(Check if Applicable)

**STATE OF FLORIDA**

—vs—

WILLIAM E. DUNCAN
**Defendant**

IN THE CIRCUIT COURT,     **FIRST**
JUDICIAL CIRCUIT, IN AND FOR

**ESCAMBIA** COUNTY, FLORIDA

DIVISION  'C'

CASE NUMBER  89-4006CFA5B-01

**JUDGMENT**

The Defendant, _____ WILLIAM E. DUNCAN _____ being personally before this

Court represented by _____ S. Hall, Asst. Public Defender _____ his attorney of record, and having:

(Check if Applicable)
☐ Been tried and found guilty of the following crime(s)
☒ Entered a plea of guilty of the following crime(s)
☒ Entered a plea of nolo contendere to the following crime(s)

| COUNT | CRIME | OFFENSE STATUTE NUMBER(S) | DEGREE OF CRIME | CASE NUMBER |
|-------|-------|---------------------------|-----------------|-------------|
| 1 | ARMED BURGLARY OF CONVEYANCE | 810.02(2)(b), 774.087 | F1 LIFE | |
| 3 | ATTEMPTED SEXUAL BATTERY | 777.04, 794.011(3) | F2 | |
| 4 | AGGRAVATED BATTERY WITH DEADLY WEAPON | 784.045(1)(b) | F2 | |

and no cause having been shown why the Defendant should not be adjudicated guilty, IT IS ORDERED THAT the defendant is hereby ADJUDICATED GUILTY of the above crime(s).

* * * * * * * * * * * * * * * * * * * *

The Defendant is hereby ordered to pay the sum of ten dollars ($10.00) pursuant to F.S. 960.20 (Crimes Compensation Trust Fund). The Defendant is further ordered to pay the sum of two dollars ($2.00) as a court cost pursuant to F.S. 943.25(4).

☐ The Defendant is further ordered to pay an additional two ($2.00) pursuant F.S. 943.25(8) (This provision is optional; not applicable unless checked).

(Check if Applicable)
☐ The Court hereby imposes a fine in the sum of $_____

Page 1 of ____ 4 ____